# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

VIRTUS PHARMACEUTICALS, LLC,

          *Plaintiff,*

   v.

WOODFIELD DISTRIBUTION, LLC,
WOODFIELD PHARMACEUTICAL, LLC,
and ADAM RUNSDORF,

         *Defendants.*

Case No. 8:21-cv-02427-WFJ-SPF

## <u>OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS VIRTUS'S SECOND AMENDED COMPLAINT</u>

TABLE OF AUTHORITIES..............................................................................i

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND.........................................................................1

    A.    The parties and the 2017 Services Agreement .................................1

    B.    The DEA's immediate suspension order.........................................3

    C.    Criminal indictment ....................................................................3

    D.    Significant harm to Virtus ...........................................................4

LEGAL STANDARD ...................................................................................4

ARGUMENT..............................................................................................5

I.    Virtus plausibly alleged that the defendants violated 18 U.S.C. § 1962(c). .....................................................................................5

    A.    Defendants engaged in a pattern of racketeering activity...................5

        1.    Predicate offenses:  money laundering................................6

        2.    Predicate offenses:  trafficking counterfeit goods ..............7

        3.    Continuing nature .............................................................9

    B.    Virtus properly alleged a RICO enterprise. .......................................10

II.    Virtus plausibly alleged that defendants violated 18 U.S.C. § 1962(d). .....................................................................................14

III.    Defendants' RICO violations were the but-for and proximate cause of Virtus's injuries. .........................................................................17

IV.    Virtus alleged sufficient facts to state plausible breach of contract claims against Runsdorf and Woodfield Pharmaceutical.......................19

    A.    Runsdorf dominated and controlled his businesses as the sole owner.......................................................................................20

B.    Runsdorf deliberately misused the corporate form for illegal purposes. ...................................................................20

C.    Runsdorf's improper use of the corporate form injured Virtus. ......................21

V.    Virtus properly alleged that defendants breached the covenant of good faith and fair dealing. .........................................................22

VI.    This Court should disregard the defendants' red-herring arguments. ..............................................................................24

CONCLUSION ........................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Al-Rayes v. Willingham,*
914 F.3d 1302 (11th Cir. 2019) ........................................................................ 11

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (2006) ........................................................................................... 17

*BCS Services, Inc. v. Heartwood 88, LLC,*
637 F.3d 750 (7th Cir. 2011) ............................................................................... 8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................. 4

*Bible v. United Student Aid Funds, Inc.,*
799 F.3d 633 (7th Cir. 2015) ........................................................................ 11, 12

*Boyle v. United States,*
556 U.S. 938 (2009) ...................................................................................... 10, 12

*Bridge v. Phoenix Bond & Indem. Co.,*
553 U.S. 639 (2008) ........................................................................................... 17

*Burdett v. Miller,*
957 F.2d 1379 (7th Cir. 1992) ........................................................................... 12

*Burger King Corp. v. Weaver,*
169 F.3d 1310 (11th Cir. 1999) ......................................................................... 22

*Cedric Kushner Promotions, Ltd. v. King,*
533 U.S. 158 (2001) ........................................................................................... 14

*Chrichton v. Golden Rule Ins., Co.,*
576 F.3d 392 (7th Cir. 2009) ........................................................................ 11, 14

*Cisneros v. Petland, Inc.,*
972 F.3d 1204 (11th Cir. 2020) ........................................................................ 5, 6

*Cox v. CSX Intermodal, Inc.,*
732 So. 2d 1092 (Fla. 1st DCA 1999) ............................................................... 22

*Dania Jai-Alai Palace, Inc. v. Sykes,*
450 So. 2d 1114 (Fla. 1984) .............................................................................. 19

*Fitzgerald v. Chrysler Corp.,*
116 F.3d 225 (7th Cir. 1997) ............................................................................. 14

*Freeman v. Quicken Loans, Inc.,*
  566 U.S. 624 (2012) ............................................................................................... 10

*Friedel v. Sun Communities, Inc.,*
  No. 20-12275, 2021 WL3732992 (11th Cir. Aug. 24, 2021) ............................................. 22

*Fritz v. Standard Sec. Life Ins. Co. of New York,*
  676 F.2d 1356 (11th Cir. 1982) ................................................................................... 25

*Gov't Emps. Ins. Co. v. Landau & Assocs., P.A.,*
  No. 817-cv-02848-EAK-TGW, 2019 WL 12493609 (M.D. Fla. Mar. 29, 2019) .............. 15

*H.J. Inc. v. Nw. Bell Tel. Co.,*
  492 U.S. 229 (1989) ........................................................................................... 9, 10

*Hamilton v. Suntrust Mortg. Inc.,*
  6 F. Supp. 3d 1300 (S.D. Fla. 2014) ............................................................................. 22

*Holmes v. Securities Inv'r Prot. Corp.,*
  503 U.S. 258 (1992) .......................................................................................... 17, 18

*In re Hillsborough Holdings Corp.,*
  166 B.R. 461 (M.D. Fla. 1994) ................................................................................... 20

*In re Paul C. Larsen, P.A.,*
  626 B.R. 446 (M.D. Fla. 2021) ................................................................................... 19

*Jackson v. BellSouth Telecommunications,*
  372 F.3d 1250 (11th Cir. 2004) ......................................................................... 9, 10, 15

*Johnson v. New Destiny Christian Ctr. Church, Inc.,*
  303 F. Supp. 3d 1282 (M.D. Fla. 2018) ............................................................ 19, 20, 21

*Kurlander v. Kaplan,*
  No. 8:19-cv-00742-T-02-AEP, 2019 WL 3944338 (M.D. Fla. Aug. 21, 2019) ................. 5

*Lawrence v. FPA Villa Del Lago LLC,*
  No. 20-CV-1517-VMC-JSS, 2021 WL 2144758 (M.D. Fla. Mar. 4, 2021) ....................... 23

*MCI Telecom. Corp. v. O'Brien Mktg., Inc.,*
  913 F. Supp. 1536 (S.D. Fla. 1995) ............................................................................. 20

*Medinis v. Swan,*
  955 So.2d 595 (Fla. 2d DCA 2007) ............................................................................. 22

*Raber v. Osprey Alaska, Inc.,*
  187 F.R.D. 675 (M.D. Fla. 1999) ................................................................................. 21

*Rajput v. City Trading, LLC,*
    476 F. App'x 177 (11th Cir. 2012) ..................................................... 15

*Ray v. Spirit Airlines, Inc.,*
    836 F.3d 1340 (11th Cir. 2016) ....................................................... 17

*Ray v. Spirit Airlines, Inc.,*
    767 F.3d 1220 (11th Cir. 2014) ......................................................... 4

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993) ........................................................................ 8

*RJR Nabisco Inc. v. European Cmty.,*
    579 U.S. 325 (2016) ......................................................................... 5

*Roberts' Fish Farm v. Spencer,*
    153 So.2d 718 (Fla. 1963) ............................................................. 19

*Salinas v. United States,*
    522 U.S. 52 (1997)) ....................................................................... 15

*Saunders v. Duke,*
    766 F.3d 1262 (11th Cir. 2014) ........................................................ 6

*Shaffer v. Bank of New York Mellon,*
    No. 8:17-CV-565-T-33AAS, 2017 WL 3065222 (M.D. Fla. July 19, 2017) ..................... 23

*Shamrock Oil and Gas Co.,*
    159 F. Supp. 693 (D. Colo. 1958) .................................................. 21

*Shibata v. Lim,*
    133 F. Supp. 2d 1311 (M.D. Fla. 2000) .......................................... 22

*Smith v. Bank of America Home Loans,*
    968 F. Supp. 2d 1159 (M.D. Fla. 2013) ............................................ 5

*Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,*
    896 So. 2d 787 (Fla. 2d DCA 2005) .............................................. 24

*Steinhardt v. Banks,*
    511 So.2d 336 (Fla. 4th DCA 1987) (per curiam) ........................... 20

*Tim Minn, Inc. v. Tim Hortons USA Inc.,*
    No. 20-23481-CIV, 2021 WL 4482733 (S.D. Fla. Aug. 2, 2021) ....................... 22

*United States v. 2204 Barbara Lane,*
    960 F.2d 126 (11th Cir. 1992) ...................................................... 24

*United States. v. Castro,*
89 F.3d 1443, 1450 (11th Cir. 1996) .................................................................. 15

*United States v. Christensen,*
828 F.3d 763 (9th Cir. 2015) ............................................................................. 12

*United States v. Church,*
955 F.2d 688 (11th Cir. 1992) ............................................................................ 11

*United States v. Eufrasio,*
935 F.2d 553 (3d Cir. 1991) ............................................................................... 12

*United States v. Goldin Indus., Inc.,*
219 F.3d 1271 (11th Cir. 2000) .................................................................... 10, 13

*United States v. Majors,*
196 F.3d 1206 (11th Cir. 1999) ............................................................................ 7

*United States v. Pierce,*
785 F.3d 832 (2d Cir. 2015) ............................................................................... 12

*United States v. Silvestri,*
409 F.3d 1311 (11th Cir. 2005) ............................................................................ 7

*United States v. Turkette,*
452 U.S. 576 (1981) ........................................................................................... 10

*United Steelworkers of Am., AFL–CIO–CLC v. Connors Steel Co.,*
855 F.2d 1499 (11th Cir. 1988) .......................................................................... 20

*Virtus Pharmaceuticals, LLC v. Garland,*
No. 21-2308-CKK, 2021 WL 4306165 (D.D.C. Sept. 22, 2021) ...................... 18

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,*
883 F.2d 132 (D.C. Cir. 1989) ........................................................................... 13

**Statutes**

Racketeer Influenced and Corrupt Organizations Act (RICO)

18 U.S.C. § 1956 ............................................................................... 6, 7, 9

18 U.S.C. § 1957 ............................................................................... 6, 7, 9

18 U.S.C. § 1961 ........................................................................... 5, 6, 7, 10

18 U.S.C. § 1962 .......................................................................... 5, 13, 14

18 U.S.C. § 1964 ................................................................................ 5, 17

Controlled Substances Act

    21 U.S.C. § 801 et seq. ................................................................................ 1

**Rules**

Fed. R. Civ. P. 19 ....................................................................................... 24

Fed. R. Civ. P. 20 ....................................................................................... 24

Fed. R. Civ. P. 21 ....................................................................................... 24

**Other Authorities**

*Morning Star Pharmacy*,

    85 Fed. Reg. 51,045 (Aug. 19, 2020) .................................................... 19

*Superior Pharmacy*,

    81 Fed. Reg. 31,310 (May 18, 2016) ..................................................... 18

Virtus submits this consolidated opposition to the motions to dismiss filed by defendant Adam Runsdorf (ECF. No. 39), Woodfield Distribution (ECF No. 40), and Woodfield Pharmaceutical (ECF No. 41), and states as follows:

### INTRODUCTION

This is no ordinary commercial dispute. In August 2021, the United States Drug Enforcement Administration (DEA) raided Woodfield Distribution's warehouse, seizing all controlled substances stored there—including pharmaceutical products innocently owned by Virtus. The DEA took that drastic action because, after several years of investigation, the agency concluded that the defendants' possession of controlled substances posed an *imminent danger* to the public health or safety. Indeed, the warehouse raid occurred because the defendants had engaged in criminal activity that violated RICO. Defendants' extraordinary misconduct—participation in a drug-trafficking enterprise—directly caused Virtus significant harm to its legitimate pharmaceutical business, and defendants' wrongdoing fully supports Virtus's well-pleaded federal RICO claims as well as its breach of contract and implied covenant of good faith and fair dealing causes of action under Florida law. For the reasons more fully explained below, this Court should deny the defendants' motions in their entirety.

### FACTUAL BACKGROUND

**A.     The parties and the 2017 Services Agreement**

Virtus is a small, privately held company that sells prescription and non-prescription products to wholesalers, hospitals, specialty pharmacies, and retailers. Second Amended Complaint (ECF No. 38) (Compl.) ¶ 8. Virtus owns technical applications used to produce pharmaceutical products regulated under the Controlled

Substances Act, 21 U.S.C. § 801 et seq. *Id*. ¶ 10. However, because Virtus itself is not registered with the DEA to handle controlled substances, Virtus outsources manufacturing and distribution of its pharmaceutical products to third-party DEA registrants. *Id.*

Until November 2021, defendants had DEA registrations which enabled them to manufacture and to handle pharmaceutical products regulated under the Controlled Substances Act. Woodfield Pharmaceutical describes itself as a "contract-manufacturing company" that manufactures products regulated under the Controlled Substances Act, *id*. ¶ 14, while Woodfield Distribution provides pharmaceutical companies with warehousing, storage, transportation, and distribution of controlled substances, *id*. ¶ 11. Defendant Adam Runsdorf is the president and sole owner of both companies. *Id*. ¶ 17.

In 2017, Virtus entered into a Services Agreement with Woodfield Distribution for "third-party logistics," including the warehousing, storage, and distribution of Virtus's pharmaceutical products. Compl. ¶ 41. Under the Services Agreement, Woodfield Distribution expressly agreed to provide services consistent with "commercially-reasonable standards," *id*. ¶ 42, to maintain all licenses and registrations and otherwise ensure regulatory compliance, *id*. ¶¶ 43-44, to follow recordkeeping and documentation requirements under state and federal law, *id*. ¶ 45, and to cooperate with all audits of its books, records, and employees whether performed by Virtus or a governmental agency, *id*. ¶ 46. Importantly, Woodfield Distribution also agreed to "defend" and to "indemnify" Virtus "against any third-party losses, claims, liabilities, obligations, expenses and/or damages […] or expenses associated with any recall, withdraw or cease of distribution of Virtus's products" to the extent any claims arose from Woodfield

Distribution's negligence or misconduct, in connection with Woodfield Distribution's performance or breach of the Service Agreement, or from Woodfield's handling of Virtus's products more generally. *Id.* ¶ 47. Runsdorf personally signed the Services Agreement with Virtus. *Id.* ¶ 50.

## B.    The DEA's immediate suspension order.

In August 2021, the DEA issued an order that immediately suspended the registrations held by Woodfield Distribution and Woodfield Pharmaceutical after the agency concluded that the companies failed "to maintain effective controls against the diversion of controlled substances." Compl. ¶ 78; *see also* DEA's Order (ECF No. 38-3). The DEA concluded that the continued use of the registrations constituted an imminent danger to the public health or safety.

- The DEA's order provided a non-exclusive list of the agency's findings and described Woodfield Pharmaceutical and Woodfield Distribution as "related entities," under the "common ownership" of Adam Runsdorf who "exercises significant influence and control" over the companies. Compl. ¶ 52.

- The DEA's investigation of Woodfield Distribution revealed the company's "persistent and comprehensive failure to maintain complete and accurate records, detect and report suspicious orders, and comply with the physical security requirements imposed on registrants." DEA's Order ¶ 7; *see also* Compl. ¶¶ 53–66.

- As for Woodfield Pharmaceutical, the DEA's investigation "revealed that significant quantities of controlled substances were removed from Woodfield Pharma without proper documentation or accounting and that Woodfield Pharma had connections to a suspected drug trafficking organization." DEA's Order ¶ 45; Compl. ¶ 68 (same).

## C.    Criminal indictment

No later than February 2021, the DEA suspected that Adam Runsdorf was using his employees to traffic drugs. *See* Compl. ¶¶ 73–76. The DEA executed a search warrant

on February 23, 2021, which led to the discovery of 55-gallon drums of suspected promethazine and "drug trafficking paraphernalia". *Id.* ¶ 75. A week later, the "DEA seized a Federal Express package containing $7,000 in U.S. currency, provided by a member of the suspected [drug trafficking organization] and addressed to Adam Runsdorf—the president and sole owner of both Woodfield Distribution and Woodfield Pharma." *Id.* ¶ 76. The government later obtained a three-count indictment charging members of the drug-trafficking organization, including Woodfield employees, with conspiracy, trafficking in drugs with a counterfeit mark, and conspiracy to commit money laundering. *Id.* ¶ 80. The grand jury eventually issued a superseding indictment adding Adam Runsdorf. *Id.* ¶ 83; *see also* Indictment (ECF No. 38-2).

### D.    Significant harm to Virtus

In August 2021, the DEA seized all controlled substances at Woodfield's warehouse, including pharmaceutical products innocently owned by Virtus. Compl. ¶¶ 78–79. As the direct result of defendants' misconduct, Virtus has suffered staggering financial losses, incurred massive liabilities to its customers, and experienced severe reputational damage. *Id.* ¶¶ 6, 89–100.

### LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "enough facts," accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal" actions. *Id.* at 556. This Court construes all well-pleaded allegations in the light most favorable to the plaintiff. *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1223 (11th Cir. 2014).

## ARGUMENT

I.    **Virtus plausibly alleged that the defendants violated 18 U.S.C. § 1962(c).**

RICO includes "a civil cause of action" that allows Virtus to recover damages from the defendants for the injuries that they inflicted upon Virtus's business and property by violating the statute. *RJR Nabisco Inc. v. European Cmty.*, 579 U.S. 325, 329 (2016) (citing 18 U.S.C. § 1964(c)). In its second amended complaint, Virtus alleged more than enough facts to state a plausible claim that the defendants violated RICO Section 1962(c), which prohibits participation in the conduct of a racketeering enterprise. Defendants "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of [Virtus]." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). This Court should not dismiss that claim.

### A.  Defendants engaged in a pattern of racketeering activity.

Virtus properly alleged a "pattern of racketeering activity" that included "at least two acts of racketeering activity" taken by the defendants. *Smith v. Bank of America Home Loans*, 968 F. Supp. 2d 1159, 1168 (M.D. Fla. 2013) (quoting 18 U.S.C. § 1961(5)). "Real criminal acts" occurred here. *Kurlander v. Kaplan*, No. 8:19-cv-00742-T-02-AEP, 2019 WL 3944338, at *10 (M.D. Fla. Aug. 21, 2019).

Attached to its second amended complaint, Virtus included a copy of the superseding indictment returned by the Texas grand jury on February 2, 2022. ECF No. 38-2. Defendants claim that reliance on the indictment is "problematic" for Virtus, but that makes no sense. RICO defines "racketeering activity" to include "any act *which is indictable*" under a long list of criminal provisions found in Title 18 of the U.S. Code.

8 U.S.C. § 1961(1) (emphasis added).  The defendants committed *indictable* criminal acts in violation of listed provisions, and this Court need not indulge any "speculation" to reach that conclusion.  *Cisneros*, 972 F.3d at 1213.  The indictment lists criminal acts and cites specific criminal provisions.  *See, e.g.*, Indictment ¶¶ 20–21 (including Adam Runsdorf and Woodfield Pharmaceutical); *id.* ¶¶ 26–28 (describing actions); *id.* ¶¶ 29–30 (listing additional counts).[1]

### 1.    Predicate offenses:  money laundering

Racketeering activity includes any act that is indictable under "section 1956 (relating to the laundering of monetary instruments)" and "section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity)."  Compl. ¶ 128 (quoting 18 U.S.C. § 1961(1)(B)).  Virtus alleged that Runsdorf and other members of the RICO enterprise "did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the grand jury" to commit money laundering in violation of 18 U.S.C. § 1956, and to engage in monetary transactions in violation of 18 U.S.C. § 1957.  *Id.* ¶ 129 (quoting Indictment ¶ 30).  Defendants ignore the facts that support these allegations.

The DEA filed an affidavit explaining how Runsdorf personally met with the leader of a drug-trafficking organization "to discuss future business" and to inform him that he would accept future payments only "in the form of cash"—as opposed to personal checks made out to Woodfield and "wire transfers directly to Runsdorf's personal

---

[1] This Court considers attached documents as part of the complaint, *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014), including: (1) the criminal complaint filed against Runsdorf with supporting DEA affidavit, ECF No. 38-1; (2) the superseding indictment, ECF No. 38-2; and (3) the DEA's order, ECF No. 38-3.

accounts." Aff. ¶ 22, subsection q (ECF No. 38-1); *see also* Compl. ¶ 122 (citing same). Before the drug traffickers received a new batch of counterfeit products manufactured by Woodfield for distribution, members of the organization had "to deliver cash to Gina Acosta at a Woodfield facility in Houston, Texas." *Id.* "From there, Acosta would package the cash for delivery to Runsdorf in Boca Raton, Florida." *Id.* "These packages were typically sent via FedEx and other national mail carriers." *Id.*

The DEA served FedEx with a subpoena requesting information related to these shipments. *Id.* ¶ 30. According to FedEx, between 2017 and 2021, Woodfield employees used the corporate account for Woodfield Pharmaceutical to send *sixty-eight* priority packages to Runsdorf's home in Boca Raton, Florida. *Id.* ¶ 31. Based on his "investigation, including previous intelligence and interviews," the DEA Task Force Officer concluded "that these FedEx priority overnight shipments addressed to Runsdorf contained cash payments from [the drug-trafficking organization]." *Id.* These facts support Virtus's allegation that defendants committed acts indictable as money laundering. *See, e.g.*, *United States v. Silvestri*, 409 F.3d 1311, 1332–35 (11th Cir. 2005) (describing facts that support a violation of 18 U.S.C. § 1957); *United States v. Majors*, 196 F.3d 1206, 1213–14 (11th Cir. 1999) (same for 18 U.S.C. § 1956).

## 2.    Predicate offenses:  trafficking counterfeit goods

Racketeering activity also includes any act that is indictable under "section 2320 (relating to trafficking in goods or services bearing counterfeit marks)." Compl. ¶ 133 (quoting 18 U.S.C. § 1961(1)(B)). Virtus alleged that Runsdorf and other members of the RICO enterprise "did intentionally traffic and attempt to traffic in a drug and knowingly

use a counterfeit mark on and in connection with such drug." *Id.* ¶ 134 (quoting Indictment ¶ 29). Again, defendants ignore the facts that support this allegation.

For example, the indictment explains how Woodfield employees—following Runsdorf's direct orders—bottled and packaged counterfeit promethazine syrup at Woodfield's facility, loaded the bottles for distribution, transported the bottles, and then received cash payments from members of the drug-trafficking organization who distributed the counterfeit products into interstate commerce. *See* Indictment ¶¶ 26–28. "Runsdorf was responsible for federal drug licensing compliance at Woodfield," *id.* at ¶ 21, and neither Woodfield Distribution nor Woodfield Pharmaceutical complied with the DEA's requirements for handling controlled substances, *see* Compl. ¶ 51–77 (describing noncompliance); DEA's Order (ECF No. 38-3).

Runsdorf claims that he took no "part in directing the enterprise's affairs." Mot. 8 (ECF No. 39) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). His claim has no merit. Runsdorf personally met with the leader of the drug-trafficking organization to "increase" the efficiency of the enterprise's ongoing criminal activities: Runsdorf took a "more hands-on" leadership role to facilitate "a more efficient large-scale production process of the promethazine syrup product." Aff. ¶ 22, subsection q (ECF No. 38-1); *see also* Compl. ¶ 122 (same). He was no mere participant—Runsdorf acted more like a "kingpin" directing the enterprise's illegal affairs. *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 753 (7th Cir. 2011). Under his hands-on direction, the illegal scheme generated more than $52.7 million in cash proceeds. Indictment ("Cash Proceeds" on page 15).

### 3.    Continuing nature

Defendants challenge the "*continuing* nature" of the criminal conduct that Virtus alleged as pattern of racketeering activity. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004). But their challenge lacks merit, as continuity is a flexible concept. Virtus may allege (and ultimately prove) the continuing nature of the criminal activity under RICO "in a variety of ways, thus making it difficult to formulate in the abstract any general test for continuity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). Defendants fail to recognize that continuity "is *both* a closed- and open-ended concept, referring *either* to a closed period of repeated conduct, *or* to past conduct that by its nature projects into the future with a threat of repetition." *Id.* (emphasis added).

Virtus sufficiently alleged facts to establish closed-ended continuity because the related criminal acts extended "over a substantial period of time." *Id.* at 242. "The pattern of misconduct occurred over a period of several years," Compl. ¶ 120, not over a period of "a few weeks or months," *H.J. Inc.*, 492 U.S. at 242. Virtus properly alleged "long-term criminal conduct" that Congress sought to combat when it enacted RICO. *Id.* "Beginning sometime around April 2014 and lasting until early August 2021, Runsdorf and his employees directly engaged in a pattern of activities that supported trafficking drugs with counterfeit mark." Compl. ¶ 125 (citing Indictment ¶ 29); *see also id.* ¶¶ 108, 116–24 (discussing continuity). That pattern included *related* crimes—e.g., money laundering activities in violation of 18 U.S.C. §§ 1956, 1957—as the defendants used illegal cash payments to conceal the nature of the unlawful profits that they derived from trafficking drugs. *See, e.g.*, Compl. ¶¶ 73–77, 110–115; Aff. ¶¶ 21–32 (ECF No. 38-1). This Court can end its analysis with closed-ended continuity. Virtus properly alleged it.

Either way, Virtus also established open-ended continuity. "A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *H.J. Inc.*, 492 U.S. at 242. Defendants ignore *why* the DEA raided Woodfield's warehouse: the agency explicitly concluded that the continued use of defendants' registrations posed "an *imminent danger* to the public health or safety." Compl. ¶ 11 (emphasis added); *see also* DEA's Order ¶ 61. Defendants' "illegal acts posed a threat of continued criminal activity in the future." *Jackson*, 372 F.3d at 1268; *see also* DEA's Order ¶¶ 52–56.

### B.    Virtus properly alleged a RICO enterprise.

The statutory text defining an enterprise "is obviously broad" since "the very concept of an association in fact is expansive." *Boyle v. United States*, 556 U.S. 938, 944 (2009). An association-in-fact enterprise may include "*any*" arrangement of individuals and entities. 18 U.S.C. § 1961(4) (emphasis added). Indeed, the statutory term "any" has an "expansive meaning." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012). It does not matter if the enterprise has a "loose or informal" structure. *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000) (en banc). No structural features are required for an association-in-fact enterprise beyond "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purposes." *Boyle*, 556 U.S. at 938.[2]

**Purpose**. Virtus properly identified the shared "common purpose" of the enterprise. *United States v. Turkette*, 452 U.S. 576, 583 (1981). Individuals and business

---

[2] The Supreme Court rejected the argument that other features—such as "hierarchy," "role differentiation," a "unique modus operandi," and a "chain of command"—are needed for an association-in-fact enterprise. *Boyle*, 556 U.S. at 948.

entities acted collectively to enrich themselves through the illegal distribution and trafficking of controlled substances and counterfeit drugs. Compl. ¶ 115 (citing Indictment, "Objects of the Conspiracy"). All members of the enterprise had a "shared purpose of engaging in illegal activity" that supported the overall scheme to divert controlled substances and counterfeit drugs into the black market. *Al-Rayes v. Willingham*, 914 F.3d 1302, 1308 (11th Cir. 2019); *see also* Compl. ¶ 106.

This case concerns neither a garden-variety "business relationship with the putative RICO enterprise" nor allegations that Runsdorf's businesses merely "performed services for that enterprise." *Chrichton v. Golden Rule Ins., Co.*, 576 F.3d 392, 399 (7th Cir. 2009). Runsdorf "*partnered with*" a local drug-trafficking organization, using Woodfield employees and Woodfield facilities to derive illegal profits from "the development, production, and delivery of misbranded and counterfeit promethazine-codeine cough syrup." Aff. ¶ 21 (ECF No. 38-1) (emphasis added); Compl. ¶ 18 (same). Runsdorf intentionally "used his businesses to assist with illegal drug trafficking and money laundering"—he knowingly associated himself, his employees, and his businesses with a drug-trafficking organization to rake in substantial illegal profits. Compl. ¶ 110.

Proof of a shared "devotion to making money from repeated criminal activity demonstrates an enterprise's common purpose of engaging in a course of conduct, regardless of whether the criminal activity is diverse." *United States v. Church*, 955 F.2d 688, 698 (11th Cir. 1992) (citations and internal quotation marks omitted); *accord Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655–57 (7th Cir. 2015). All defendants shared

that devotion.  They collectively generated more than $52 million in cash proceeds from racketeering activities.

**Relationships**.  In "a run-of-the-mill commercial relationship," each business entity typically "acts in its individual capacity to pursue its individual self-interest." *Bible*, 799 F.3d at 655–56.  There is no RICO enterprise in that situation.  But when an individual or entity acts *in concert with others* to pursue a common interest, courts have found "a truly joint enterprise." *Id.* at 656 (citing examples).  That is exactly what happened here: members of the enterprise worked in concert with each other, and the enterprise "persisted as an identifiable entity through time."  Compl. ¶ 108 (quoting *Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992)).

The enterprise "was not an ad hoc affair," as members had distinct "roles within it." *Burdett*, 957 F.2d at 1379; *see also* Compl. ¶ 107 (describing members and roles) (citing Indictment ¶¶ 15-25).  Virtus sufficiently alleged an association-in-fact enterprise because it is enough for each defendant to "know the general nature of the enterprise" and to "know that the enterprise extends beyond his individual role." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (quoting *United States v. Eufrasio*, 935 F.2d 553, 577 n.29 (3d Cir. 1991)).

**Longevity**.  Courts have rejected "rigid" rules for enterprises, concluding that "there is no hard-and-fast time period" to satisfy the longevity requirement. *United States v. Pierce*, 785 F.3d 832, 838 (2d Cir. 2015).  Here, defendants had more than enough time "to pursue the enterprise's purposes," *Boyle*, 556 U.S. at 938, over the seven-year period between 2014 and 2021, Compl. ¶ 125.

**Woodfield Distribution**.   In its motion to dismiss, Woodfield Distribution acknowledges that RICO makes it "unlawful for *any person* employed by or *associated with* any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, *directly or indirectly*, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Mot. 3, ECF. No. 40 (quoting 18 U.S.C. § 1962(c)) (emphasis added).   Incorrectly, however, Woodfield Distribution suggests that Virtus failed "to allege any facts to support a plausible inference" that it falls within the scope of that broad statutory language.  *Id.* at 4.

Congress enacted Section 1962(c) "to target a specific variety of criminal activity, 'the exploitation and appropriation of legitimate businesses by corrupt individuals.'" *Goldin Indus.*, 219 F.3d at 1270 (quoting *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 139 (D.C. Cir. 1989)).  Here, that corrupt individual is Adam Runsdorf—the president and sole owner of both Woodfield Distribution and Woodfield Pharmaceutical.  Compl. ¶ 52.  His companies are "related entities."  DEA's Order ¶ 1 (ECF No. 38-3).  And, at all relevant times that criminal activity occurred, Runsdorf exercised "significant influence and control" over Woodfield Distribution and Woodfield Pharmaceutical.  *Id.* ¶ 59; *see also* Compl. ¶ 52 (same).

Woodfield Distribution observes that it was not indicted by the Texas grand jury on February 2, 2022.  Mot. 6 (ECF No. 40).  But that observation does not get it very far. *Runsdorf* was indicted, and Section 1962(c) "applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner—whether he conducts those affairs within the scope, or beyond the scope, of corporate authority."

13

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166 (2001).  RICO liability attached because, at a bare minimum, Virtus properly alleged that Runsdorf used Woodfield Distribution to commit "some criminal activities" even if, "for the most part," he allowed the company "to continue to conduct its normal, lawful business" while many of the employees were unaware that it was "controlled and being used by a criminal." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997).

Woodfield Distribution insists that it was only "tangentially involved in the alleged enterprise." Mot. 5 (ECF No. 40).  Yet that is not a reasonable inference.  The DEA found that Woodfield Distribution had the same problems with theft, security, and recordkeeping for controlled substances as its sister company, Woodfield Pharmaceutical.  Compl. ¶ 111; *see also id.* ¶¶ 53–66.  Indeed, the DEA provided several examples demonstrating that Runsdorf used *both companies* to engage in an ongoing pattern of criminal activity that diverted controlled substances into the black market.  DEA's Order ¶¶ 8–61.  In these circumstances, it strains credulity to suggest that Woodfield Distribution maintained only an innocent run-of-the-mill business relationship with the enterprise.  Mot. 6 (ECF. No. 40) (citing *Crichton*, 576 F.3d at 392).

## II.    Virtus plausibly alleged that defendants violated 18 U.S.C. § 1962(d).

As with its Section 1962(c) claims, Virtus properly alleged an actionable RICO conspiracy claim under Section 1962(d) against each defendant.  The motions to dismiss the conspiracy count identically argue in conclusory fashion (in 3/4 of a page) that the complaint lacks "independent, well-pleaded factual allegations" that the defendants engaged in the RICO conspiracy.  Runsdorf Mot. 13 (ECF No. 39); Woodfield Pharm. Mot. 10 (ECF No. 40); Woodfield Distrib. Mot. 11 (ECF No. 41).  This argument does not

withstand the slightest scrutiny, as the complaint is replete with factual allegations demonstrating that Virtus's conspiracy claim is well-founded and plausible.

To prove a RICO conspiracy, a plaintiff "must show an agreement to violate a substantive provision of RICO." *Gov't Emps. Ins. Co. v. Landau & Assocs., P.A.*, No. 817CV02848EAKTGW, 2019 WL 12493609, at *8 (M.D. Fla. Mar. 29, 2019) (citing *U.S. v. Castro*, 89 F.3d 1443, 1450 (11th Cir. 1996)). "There are two methods for establishing the requisite agreement for a RICO conspiracy claim…." *Id.* "To establish a RICO conspiracy, a plaintiff must show *either* agreement with the objective of the conspiracy *or* agreement to commit two racketeering predicates." *Rajput v. City Trading, LLC*, 476 F. App'x 177, 180 (11th Cir. 2012); *see also Gov't Emps. Ins. Co.*, 2019 WL 12493609, at *8. Direct evidence of agreement is not necessary, as "the existence of conspiracy may be inferred from the conduct of the participants." *Rajput*, 476 F. App'x at 180. A defendant may be liable for RICO conspiracy even if it is not itself liable for the underlying substantive RICO offense, so long as an underlying RICO offense is established. *Jackson*, 372 F.3d at 1269 (citing *Salinas v. United States*, 522 U.S. 52, 62–64 (1997)).

As explained above, the complaint states actionable underlying RICO claims against each defendant. And as to the elements of conspiracy, the complaint alleges that the defendants agreed *both* with the objective of the conspiracy, and to commit two racketeering predicates—either of which suffices for RICO conspiracy liability.

**Agreement with the objective of the conspiracy.** The defendants agreed to facilitate the illegal diversion of controlled substances into a drug trafficking enterprise, which was the objective of the conspiracy. Although it goes unmentioned in defendants' briefs, paragraph 115 of the Complaint describes the objective of the conspiracy:

15

> The indictment explains how Runsdorf—using Woodfield Pharmaceutical's manufacturing facilities and directing various individual Woodfield employees—knowingly conspired with members of the Marshall drug-trafficking organization to introduce "misbranded drugs into interstate commerce."  Exhibit B, ¶ 26; *see also id*. ¶¶ 27–28 (describing actions).  "The objectives of the conspiracy varied depending on the participant," but *the overall objective—shared by all participants—*"was to enrich themselves through the distribution and trafficking of misbranded and counterfeit drugs, namely, promethazine-based cough syrup."  *Id.* ("Objects of the Conspiracy").

*Id.* ¶ 115 (emphasis added).  Woodfield Distribution, which is solely owned by Runsdorf, shared this same objective, and it equally played its part in knowingly facilitating the conspiracy.  *Id.* ¶¶ 107-117 (describing Woodfield Distribution's knowing facilitation by allowing theft, falsification of records, and distribution of the controlled substances involved in the criminal drug-trafficking).

**Agreement to commit two or more predicate acts.**  Virtus properly alleged that the defendants "knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further their schemes as described above."  Compl. ¶ 140.  Each defendant knowingly conspired with members of the drug-trafficking organization to introduce "misbranded drugs into interstate commerce."  *Id.* ¶ 115.  The defendants—masterminded by Runsdorf, who completely controlled both of his companies—agreed to commit money laundering and counterfeit trafficking predicate offenses.  These allegations are more than sufficient to set out a RICO conspiracy claim.

### III.    Defendants' RICO violations were the but-for and proximate cause of Virtus's injuries.

Virtus suffered significant injury to its business activities, especially the sale and distribution of its pharmaceutical products, "by reason of" defendants' RICO violations. 18 U.S.C. § 1964(c).  The statutory term "by reason of" includes not only but-for causation, "but the proximate cause as well."  *Holmes v. Securities Inv'r Prot. Corp.*, 503 U.S. 258, 267–68 (1992).  Virtus alleged facts establishing the requisite causation.  The connection between Virtus's injury and defendants' racketeering activities was "neither remote, purely contingent, nor indirect."  *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016).  Defendants' activities "led directly" to Virtus's injuries.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); Compl. ¶¶ 89–100, 135–36.

Proximate cause "is a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case."  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (internal quotation marks omitted).  Courts use proximate cause as a generic "label" for the judicial tools that they use "to limit a person's responsibility for the consequences of that person's own acts."  *Holmes*, 503 U.S. at 268.  Defendants' conduct "need not be the sole cause of [Virtus's] injuries, but there must be some direct relation between the conduct and the injury" for Virtus to sustain its claims.  *Ray*, 836 F.3d at 1349 (internal quotation marks omitted).  That direct relationship exists here.

The DEA raided Woodfield's warehouse and seized all controlled substances stored there—including pharmaceutical products innocently owned by Virtus—because of defendants' racketeering activities.  In "light of the rampant and deadly problem of prescription controlled substance abuse," the DEA concluded that the defendants' continued use of their registrations posed "an imminent danger to the public health and

safety."  DEA's Order at page 14 (ECF No. 38-3).  Administrator Anne Milgrim thus ordered DEA agents "to place under seal or to remove for safekeeping *all controlled substances* that Woodfield" possessed pursuant to its registrations.  *Id.* (emphasis added).

The DEA took this drastic action because the defendants had engaged in criminal activity that violated RICO.  Reviewing the agency's action, the D.C. district court found that "the DEA's order clearly articulates public safety concerns associated with Woodfield's failure to effectively prevent the diversion of controlled substances, including alleged connections to a drug trafficking organization." *Virtus Pharm., LLC v. Garland*, No. 21-2308-CKK, 2021 WL 4306165, at *8 (D.D.C. Sept. 22, 2021) (citing DEA's Order at 2–3).

Moreover, the DEA considered the direct consequences of Runsdorf's actions in seizing the pharmaceuticals that Woodfield Distribution maintained, and in revoking its DEA registration. *Holmes*, 503 U.S. at 268.  Based on its investigation, the DEA found that Runsdorf had "partnered with" a drug-trafficking organization and that Runsdorf had used his "employees and facilities" to conduct a pattern of racketeering activity that centered around drug trafficking.  Aff. ¶ 21 (ECF No. 38-1); *see also* Indictment (ECF No. 38-2).  "In numerous cases," the DEA has concluded that, "where misconduct has previously been proved" by an owner or key employee of one company, the agency may revoke a registration held by a sister company when the same individual has significant "influence over the management or control" over both companies. *Superior Pharmacy*, 81 Fed. Reg. 31,310, 31,341 n. 71 (May 18, 2016) (cited in DEA's Order ¶ 57).  Because "the same individual"—referring to Runsdorf—exercised management and complete control over both Woodfield Distribution and Woodfield Pharmaceutical, the DEA found that

"the misconduct of either entity is relevant to the determination of whether the other can be entrusted with a DEA registration." DEA's Order ¶ 60 (citing *Morning Star Pharmacy*, 85 Fed. Reg. 51,045, 51,062 (Aug. 19, 2020)).

In sum, the defendants' racketeering activity directly resulted in the government seizing Virtus's property, and thus was the actual and proximate cause of Virtus's harm. Virtus adequately pleaded causation for its RICO claims.

## IV.    Virtus alleged sufficient facts to state plausible breach of contract claims against Runsdorf and Woodfield Pharmaceutical.

Those who properly use state law "to do business in the corporate form have every right to rely on the rules of law which protect them against personal liability." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984) (quoting *Roberts' Fish Farm v. Spencer*, 153 So.2d 718, 721 (Fla. 1963)). But that protection does not extend to those who have used the corporate form for "some illegal, fraudulent or other unjust purpose" *Id.*

Virtus alleged sufficient facts to support its claim that: (1) Runsdorf dominated and controlled his businesses to such an extent that Woodfield Pharmaceutical's and Woodfield Distribution's independence was nonexistent and that Runsdorf was the alter ego of his businesses; (2) Runsdorf used the corporate form for an improper purpose; and (3) the improper use of the corporate form caused injury to Virtus. *In re Paul C. Larsen, P.A.*, 626 B.R. 446, 452 (M.D. Fla. 2021). Virtus must carry a very heavy burden, but this case is extraordinary as Runsdorf committed "deliberate improper conduct." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 303 F. Supp. 3d 1282, 1286 (M.D. Fla. 2018).

**A.    Runsdorf dominated and controlled his businesses as the sole owner.**

This case involves much more than "mere majority or complete stock control." *MCI Telecom. Corp. v. O'Brien Mktg., Inc.*, 913 F. Supp. 1536, 1541 (S.D. Fla. 1995) (quoting *United Steelworkers of Am., AFL–CIO–CLC v. Connors Steel Co.*, 855 F.2d 1499, 1506 (11th Cir. 1988)).  Runsdorf exercised "complete domination" over his businesses to such an extent that neither Woodfield Distribution nor Woodfield Pharmaceutical had a "separate mind, will or existence of its own." *Id.*; *see also* Compl. ¶¶ 5, 17, 52, 72; DEA's Order ¶¶ 1, 59–60.  Runsdorf habitually used his companies as mere instrumentalities to execute racketeering activities.  As the only employee responsible for "federal drug licensing compliance," Compl. ¶ 107, Runsdorf opened the doors of his manufacturing facility to members of an illegal drug-trafficking organization, *see id.* ¶¶ 18, 115, 119, 121– 24.  They even produced a video at the facility to promote misbranded and counterfeit products. *Id.* ¶ 123.  On top of that, Runsdorf commandeered his employees to participate in the illegal scheme. *Id.* ¶¶ 18, 110, 115.

**B.    Runsdorf deliberately misused the corporate form for illegal purposes.**

This Court has held that "the key" to piercing the corporate veil under Florida law "is deliberate improper conduct." *Johnson*, 303 F. Supp. 3d at 1286.  "Such deliberate misconduct can be shown by closely examining the relationship between the shareholder and the corporation." *Id.*  Here, Runsdorf used his businesses as a "mere device or sham to accomplish some ulterior purpose," to "evade some statute," and "for fraudulent or misleading purposes" to evade personal liability. *Id.* (quoting *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 469 (M.D. Fla. 1994)); *see also Steinhardt v. Banks*, 511 So.2d 336 (Fla. 4th DCA 1987) (per curiam).

Virtus alleged that "Runsdorf used his businesses to assist with illegal drug trafficking and money laundering." Compl. ¶ 110. At this preliminary stage of the litigation, that allegation demonstrates that Virtus "sufficiently stated a claim for piercing the corporate veil." *Johnson*, 303 F. Supp. 3d at 1287. But that is not all. As explained above, Virtus alleged additional facts describing the various ways in which Runsdorf used his businesses to facilitate the illegal manufacture and distribution of controlled substances. Virtus is not alone in alleging such facts. *See, e.g.*, Criminal Compl. (ECF No. 38-1), Indictment (ECF No. 38-2); DEA's Order (ECF No. 38-3).

## C.    Runsdorf's improper use of the corporate form injured Virtus.

Virtus suffered substantial harm because of Runsdorf's "intentional misconduct" and the improper use of the corporate form to engage in racketeering activities. Virtus lost customers, had to reduce its workforce, incurred additional financial harm when it was unable to supply its customers, and suffered significant injury to its reputation in the marketplace. *See* Compl. ¶¶ 4–5, 89–100.

As to the breach of contract, Virtus alleged sufficient facts to establish that Runsdorf and Woodfield Pharmaceutical were alter egos of Woodfield Distribution. "Courts have not been hesitant in finding that the corporate veil is pierced in cases where the corporation acts as an alter ego of the corporation's members." *Raber v. Osprey Alaska, Inc.*, 187 F.R.D. 675, 678 (M.D. Fla. 1999). Once the corporate veil is pierced, "any acts committed by either the corporation or a member of the corporation are treated as the acts of both and if either is bound, by contract, judgment, or otherwise, both are equally bound." *Id.* at 678–79 (quoting *Shamrock Oil and Gas Co.*, 159 F. Supp. 693, 695–96 (D. Colo. 1958)). Thus, Virtus has stated a claim for breach of contract against all defendants.

## V.    Virtus properly alleged that defendants breached the covenant of good faith and fair dealing.

"Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). "To state a claim for breach of the implied covenant of good faith under Florida law, a plaintiff must allege that 'an express term of a contract was violated.'" *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1310 (S.D. Fla. 2014) (quoting *Medinis v. Swan*, 955 So.2d 595, 597 (Fla. 2d DCA 2007)).

To survive a motion to dismiss, Virtus must plead facts sufficient to show that "[defendants'] failure or refusal to discharge contractual responsibilities" was "prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (citing *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)). Virtus satisfied its burden.

Defendants argue that a breach of the implied covenant of good faith and fair dealing does not create an independent cause of action under Florida law. They are "mistaken." *Tim Minn, Inc. v. Tim Hortons USA Inc.*, No. 20-23481-CIV, 2021 WL 4482733, at *12 (S.D. Fla. Aug. 2, 2021), *report and recommendation adopted*, No. 20-CV-23481, 2021 WL 4480281 (S.D. Fla. Sept. 30, 2021) (clarifying that both the Eleventh Circuit and Florida state appellate courts have held "that the cause of action will only lie under limited circumstances[]" rather than holding that no independent cause of action exists at all).

Defendants misread *Friedel v. Sun Communities, Inc.*, No. 20-12275, 2021 WL 3732992 (11th Cir. Aug. 24, 2021). There, the Eleventh Circuit concluded that the

plaintiff failed to state a claim for the breach of the implied covenant of good faith and fair dealing because the complaint "failed to identify the specific contractual obligation breached by the defendants to which the breach of the implied covenant would attach." *Id.* at *4; *see also Lawrence v. FPA Villa Del Lago LLC*, No. 8:20-CV-1517-VMC-JSS, 2021 WL 2144758, at *5 (M.D. Fla. Mar. 4, 2021) (same). Yet, unlike *Freidel* and *Lawrence*, Virtus has identified several specific contractual provisions that defendants breached, to which the implied covenant attaches. Compl. ¶¶ 42–49, 87, 146.

While it is true that "a proper pleading of breach of the covenant of good faith and fair dealing necessarily requires the pleading of a valid contract[,]" there is no requirement that the contract giving rise to the implied covenant must be signed by all of the parties against whom breach of the implied covenant is being alleged. *Shaffer v. Bank of New York Mellon*, No. 8:17-CV-565-T-33AAS, 2017 WL 3065222, at *6 (M.D. Fla. July 19, 2017). This Court rejected the argument that a plaintiff's claim for a breach of the implied covenant of good faith and fair dealing must be dismissed for lack of a valid contract. *Id.*

Like the defendants in *Shaffer*, Runsdorf and Woodfield Pharmaceutical argue that no valid contract exists between them and Virtus. They misunderstand the law. The Services Agreement is a valid contract enforceable against not only Woodfield Distribution, but also against non-signing parties Runsdorf and Woodfield Pharmaceuticals under an alter-ego theory of liability. Because Virtus "has plausibly pled the existence of a contract" against each of the defendants, Virtus's claims for breach of the implied covenant survive a motion to dismiss. *Id.* at *6.

Admittedly, the duty of good faith performance does not exist until a plaintiff can establish a term of the contract that the other party was obligated to perform and did not.

*Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. 2d DCA 2005).  But Virtus has identified several express provisions that the defendants failed to perform under the Services Agreement.  The court should deny defendants' motions.

**VI.    This Court should disregard the defendants' red-herring arguments.**

No court should address a misleading argument presented "as a bright red herring" irrelevant to the legal issues that it must decide.  *United States v. 2204 Barbara Lane*, 960 F.2d 126, 128 (11th Cir. 1992).  Defendants, however, present two irrelevant sideshow arguments that are mere distractions and can be rejected.

First, Virtus properly amended its complaint.  Woodfield Pharmaceutical urges this Court to dismiss all claims against it because "Rule 21 specifically requires that a motion be filed, and leave sought to add parties."  Mot. 3 (ECF No. 41).  But that is not what the rule says.  Even assuming misjoinder of a party, that "is not a ground for dismissing an action."  Fed. R. Civ. P. 21.  In any event, Virtus did move this Court for leave to file an amended complaint, ECF No. 22, and the Court granted its motion, ECF No. 23.  The amended complaint properly added Woodfield Pharmaceutical as a defendant.  ECF No. 24; *see also* Fed. R. Civ. P. 19 (required joinder); Fed. R. Civ. P. 20 (permissive joinder).  In fact, no defendant opposed Virtus's second amendment.

Second, Woodfield Pharmaceutical and Runsdorf wrongly claim that Virtus "abandoned diversity of citizenship in favor of a manufactured federal question."  Mot. 3 (ECF No. 41); *see also* Mot. 2 (ECF No. 39) ("Virtus apparently decided adding two federal civil RICO claims would be a creative way to avoid having to meet the requirements of diversity of citizenship.").  Yet earlier versions of the complaint are irrelevant here.  "Under the Federal Rules, an amended complaint supersedes the original complaint."

*Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982). Virtus properly alleged RICO claims in this case only after it acquired more information about defendants' criminal actions. No defendant challenges the Court's subject matter jurisdiction over this action.

## CONCLUSION

For the foregoing reasons, this Court should deny defendants' motions to dismiss Virtus's second amended complaint.


March 28, 2022                              Respectfully submitted,

                                                 */s/ Jeffrey Beelaert*
                                                 Robert B. Gilmore*
                                                 Jeffrey Beelaert*
                                                 **STEIN MITCHELL BEATO & MISSNER LLP**
                                                 901 15th Street, NW, Suite 700
                                                 Washington, D.C. 20005
                                                 Telephone: (202) 737-7777
                                                 Facsimile: (202) 296-8312
                                                 Email: RGilmore@steinmitchell.com
                                                 Email: JBeelaert@steinmitchell.com

                                                 *Admitted Pro Hac Vice*

                                                 */s/ Erin G. Jackson*
                                                 Erin G. Jackson
                                                 Florida Bar No.: 413097
                                                 **JOHNSON JACKSON PLLC**
                                                 100 N. Tampa St., Suite 2310
                                                 Tampa, Florida 33602
                                                 Telephone: (813) 580-8400
                                                 Facsimile: (813) 580-8407
                                                 Email: ejackson@johnsonjackson.com

                                                 ***Attorneys for Plaintiff Virtus
                                                 Pharmaceuticals, LLC***

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Opposition to Defendants'

Motions to Dismiss Virtus's Second Amended Complaint was filed on March 28, 2022,

using this Court's CM/ECF system, which sends a copy to all parties.

_/s/ Jeffrey S. Beelaert_
ATTORNEY FOR VIRTUS